UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER BRODERICK,

        Plaintiff,                                       Civil Action No. 21-12480

vs.                                                       HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION & ORDER**
**(1) OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 15); (2) ADOPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (R&R) (Dkt. 14); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 10); (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 12); AND (5) AFFIRMING THE COMMISSIONER'S DECISION**

Plaintiff Jennifer Broderick seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. Broderick and the Commissioner filed cross-motions for summary judgment (Dkts. 10, 12). The magistrate judge issued an R&R recommending that the Court deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's decision (Dkt. 14). Broderick filed objections (Dkt. 15), to which the Commissioner responded (Dkt. 16). For the reasons that follow, the Court overrules Simpson's objections and adopts the recommendation contained in the R&R.

                              I.        **BACKGROUND**

In her application, Simpson alleged disability as of June 30, 2015 based on depression, anxiety, a head injury, tremors, and post-traumatic stress disorder (PTSD). R&R at 2. After her initial claim was denied, Broderick requested a hearing before Administrative Law Judge (ALJ)

Paul Sher, who found that she was not disabled. Id. The Appeals Council found that the ALJ's determination that Plaintiff's migraines were adequately treated with medication was not sufficiently supported and remanded for further fact-finding. Id.

ALJ Sher held a second hearing on September 22, 2020, and again found that Broderick was not disabled. Id. Engaging in the five-step disability analysis, the ALJ found at step one that Broderick had engaged in substantial gainful activity from June 30, 2015 through July 31, 2015, and from May 1, 2016 through October 31, 2016, but had not otherwise engaged in substantial gainful activity since the alleged onset date. Id. at 5–6. At step two, the ALJ found the following conditions severe: "depression/bipolar disorder, generalized anxiety disorder, and migraine." Id. at 6 (punctuation modified). The ALJ found the following conditions not severe: "obesity; epilepsy; degenerative disc disease of the cervical spine C5–C7; mild lumbar degenerative disc disease; tremor; history of PTSD; and remote traumatic brain injury." Id. (punctuation modified). At step three, the ALJ found that none of Broderick's impairments met or medically equaled a listed impairment. Id. (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). "The ALJ found that Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing herself." Id. The ALJ determined that Broderick had a residual functional capacity (RFC) to perform light work with certain limitations. Id. at 6–7.

At step four, the ALJ found that Broderick could not perform any of her past relevant work. Id. at 7. At step five, the ALJ denied Broderick's application for benefits, citing a vocational expert's testimony that Broderick had transferrable skills enabling her to perform the light-exertion, unskilled positions of mail clerk, housekeeping cleaner, and inspector to support his finding that Broderick could perform a significant number of jobs in the national economy. Id.

2

On appeal, Broderick argued that "while the ALJ gave ostensibly 'significant' weight to the opinions of the consultative (Dr. Brady) and non-examining (Dr. Hall) sources in support of the RCF for a range of unskilled work, he ignored the portions of those opinions supporting a disability finding." Id. at 23 (citing Pl. Mot. for Summ. J. at PageID.1486–1492). Additionally, she argued "that the ALJ erred by over-relying on her ability to attend sporting events and travel in discounting Dr. Vredevoogd's finding of disabling cognitive limitation." Id. (citing Pl. Mot. for Summ. J. at PageID.1492–1494). The magistrate judge addressed the findings of each doctor in turn. See id. at 24–40.

### A. Dr. Brady's Consultative Examination

Dr. Brady examined Broderick on behalf of the Social Security Administration in June 2017, and observed that she had "good hygiene, contact with reality, full orientation, and well-organized thoughts and speech," as well as "normal immediate, recent, and past memory." Id. at 24. Dr. Brady did note some "abnormalities in concentration and judgment," and found (i) that Broderick's ability to relate with others was impaired, (ii) that her ability to understand, recall, and complete tasks was not significantly impaired, and (iii) that her ability to concentrate and to withstand normal workplace stressors was somewhat impaired. Id. at 25. Dr. Brady opined that "due to Plaintiff's 'emotional state,' her effectiveness and performance will likely be limited and slowed." Id. (punctuation modified).

The ALJ assigned significant weight to Dr. Brady's opinion because it was consistent with the medical record "and was consistent with the limitations set forth in the [RFC] as it relates to occasional interaction with co-workers and supervisors and no interact[ion] with the general public and in limiting [Plaintiff] to simple, routine, and repetitive tasks . . . ." Id.

In response to Broderick's argument that the ALJ should have discussed Dr. Brady's findings that Broderick might often be distracted and that her "effectiveness and performance will likely be limited and slowed," the magistrate judge emphasized that the ALJ is not required to address all of the evidence in the record. Id. at 25–26 (citing Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999)).

Additionally, the magistrate judge found that despite Broderick's argument to the contrary, Dr. Brady did not find a greater degree of impairment than was reflected in the RFC. Id. at 26. The magistrate judge explained that an RFC (i) restricting Broderick to occasional interactions with coworkers and supervisors, (ii) precluding her from interacting with the public, (iii) limiting her to simple, routine tasks not at a production rate, and (iv) limiting her to settings with infrequent and easily explained changes to the workplace adequately reflected the moderate impairments in concentration, persistence, and pace recognized by Dr. Brady. Id. (citing Smith-Johnson v. Comm'r of Soc. Sec., 579 F. App'x 426, 437 (6th Cir. 2014) (holding that an RFC limited to "simple, routine, and repetitive tasks" adequately addressed claimant's moderate limitations in attention and concentration)). Such an RFC also accounted for Dr. Brady's "finding of some level of impairment in dealing with workplace stress." Id. at 27.

**B. Dr. Hall's Non-Examining Assessment**

Dr. Hall provided a non-examining review of the records in this case on behalf of the Social Security Administration in June 2017. R&R at 27. Dr. Hall determined that Broderick was moderately limited in her ability to interact with others and in her ability to concentrate, persist, or maintain pace. Id. Dr. Hall concluded that Broderick was "limited to 'simple, unskilled routine work' in a 'low-stress work environment with no specific production quotas or requirements' with

4

only 'brief and superficial contact' with supervisors, coworkers, and the general public." Id. (quoting Soc. Sec. Tr. at PageID.134 (Dkt. 7-3)).

The ALJ provided the following explanation for why he accorded Dr. Hall's opinion "significant weight":

> [The opinion] was consistent with the overall record. For example, the claimant's psychiatrist consistently reported that her depression and anxiety were improving and her symptoms were stable overall. . . . Mental status examinations by her psychiatrist and neurologists supported no more than moderate limitations. . . . Additionally, there was evidence in the record that the claimant was capable of attaining several part-time jobs and that she was able to travel occasionally both domestically and internationally with friends and family.

Soc. Sec. Tr. at PageID.54 (Dkt. 7-2).

Broderick argued on appeal that despite affording this opinion significant weight, the ALJ crafted an RFC that did not contain all the limitations recommended by Dr. Hall. R&R at 28. For example, Broderick argued that the ALJ failed to address Dr. Hall's finding that she "'may have moderate difficulties to complete a normal workweek secondary to psychologically based symptoms.'" Id. (quoting Pl. Mot. for Summ. J. at PageID.1490). The magistrate judge concluded that the qualified statement that Broderick might have difficulties completing a workweek did not support a concrete limitation. Id. (citing Herndon v. Comm'r of Soc. Sec., No. 1:20-cv-00885-JDG, 2021 WL 811660, at *21 (N.D. Ohio Mar. 3, 2021) (finding no error where ALJ found vague assertions that plaintiff might need various accommodations unpersuasive because "the hedging d[id] not provide clear functional limitations"; stating, "[A]n ALJ may assign less weight to an opinion for vagueness")). Moreover, the magistrate judge explained that "the ALJ did not state that he adopted Dr. Hall's opinion in its entirety but rather accorded it substantial weight." Id. (punctuation modified) (citing Loral Def. Sys.-Akron, 200 F.3d at 453 ("[T]he fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the

5

ALJ failed to consider the evidence.") (punctuation modified)). The magistrate judge found that "[t]he ALJ's finding of moderate limitation in interacting with others and concentration are drawn verbatim from Dr. Hall's findings." Id. at 28–29.

Broderick also noted that at one point in Dr. Hall's assessment, she found that Broderick "was limited to 'brief and superficial interactions with the general public and only occasional interaction with co-workers and supervision,' but in her final summary, 'only brief and superficial contact with supervisors and coworkers and with the general public.'" Id. at 29 (quoting Pl. Mot. for Summ. J. at PageID.1491). Broderick "fault[ed] the ALJ for failing to resolve the internal contradiction in Dr. Hall's opinion." Id. The magistrate judge found this argument unpersuasive because (i) the RFC's limitation that Broderick have only occasional interaction with supervisors and coworkers was drawn from a portion of Dr. Hall's opinion, and (ii) the finding that Broderick could interact occasionally with coworkers and supervisors was otherwise supported by substantial evidence, given Broderick's ability to travel domestically and internationally with others, to attend sporting events, and to cooperate during medical exams. Id. The magistrate judge concluded that there was no ground for remand because "'[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.'" Id. at 29–30 (quoting Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389–390 (6th Cir. 1999)).

**C. Dr. Vredevoogd's Testing and Opinion**

Dr. Vredevoogd performed a neuropsychological evaluation including IQ testing in August 2020. R&R at 30. The IQ testing showed an IQ score of 68, placing Broderick in the "mildly to moderately impaired range of the second percentile relative to same-aged peers." Id. (punctuation modified). It also showed "a perceptual reasoning index of 61; average attention testing; and

6

memory in the low average to moderately impaired range." Id. (punctuation modified). Dr. Vredevoogd concluded that Broderick "was incapable of competitive employment due to emotional instability and deficits in executive functions." Id. (punctuation modified). The ALJ rejected the opinion that Broderick was unable to engage in competitive employment because that determination is reserved to the Commissioner. Id.; see 20 C.F.R. § 1527(d)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.").

The ALJ found that the substance of Dr. Vredevoogd's opinion was unpersuasive because "[t]he evidence [does not] support that the claimant was so limited cognitively that she would be unable to sustain employment, and there was not significant evidence that the claimant was so unstable that she could not handle stress." R&R at 31. In reaching this conclusion, the ALJ cited a variety of evidence, including: (i) Broderick held a valid driver's license; (ii) she played electronic games on her smart phone for at least an hour at a time; (iii) she had the attention necessary to watch football games; (iv) she had the attention necessary to watch movies; and (v) she frequently traveled domestically and internationally. Id. The ALJ also discussed the results of a psychological and neurological examination, finding that those results did not support Dr. Vredevoogd's opinion. Id.

On appeal, Broderick argued that the ALJ did not adequately account for the effect of stress on her ability to work, pointing to the fact that she has been hospitalized on multiple occasions for suicidal ideation or cognitive problems. Id. at 31. The magistrate judge explained that the ALJ acknowledged these hospitalizations, "but noted that they were brief and that mental status examinations taken shortly after admittance were relatively unremarkable." Id. at 31–32. The ALJ noted that one hospitalization appeared to result from stressors related to Broderick's financial

7

and living situation, and pointed to records in which Broderick denied suicidal thoughts and demonstrated normal memory and full orientation, among other evidence. Id. at 32. The magistrate judge determined that the ALJ had not erred, concluding, "The ALJ's findings are consistent with my own review of the hospital records showing that Plaintiff voiced suicidal thoughts on a routine basis in response to minor interpersonal conflicts." Id. at 33. The magistrate judge also determined that Broderick's argument that the ALJ failed to adequately account for Broderick's IQ or cognitive limitations was without merit. Id.

## II. ANALYSIS

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (punctuation modified). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (punctuation modified). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by" the ALJ. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

Broderick objects to the magistrate judge's R&R on four grounds. First, she objects that "[w]hile the ALJ does not need to discuss all evidence in the record, the Magistrate Judge's finding that the ALJ did not need to address relevant limitations in Dr. Brady's report is inconsistent with

8

established case law." Obj. at 2. Second, she objects that "[t]he Magistrate Judge erred in concluding that Dr. Brady did not find a greater degree of limitation than what was reflected in the RFC assessment." Id. at 4. Third, she objects that the magistrate judge erred "in finding that the ALJ did not need to provide any further explanation for his assessment of Dr. Hall's opinion." Id. at 6. Fourth, Broderick objects that "[n]either the ALJ nor the Magistrate Judge adequately explained why Dr. Vredevoogd's opinion was not supported." Id. at 10.

### A. Objection One: Limitations in Dr. Brady's Report

Broderick acknowledges that the ALJ was not required to discuss every piece of evidence in the record, but objects that because the ALJ assigned significant weight to Dr. Brady's opinion, he was required to explain why any limitations from that opinion were not adopted in the RFC assessment. Obj. at 2 (citing Tuttle v. Comm'r of Soc. Sec., No. 16-cv-11144, 2017 WL 2928021, at *7 (E.D. Mich. June 9, 2017), report and recommendation adopted, 2017 WL 2905125 (E.D. Mich. July 7, 2017) (holding that where the ALJ "accorded great weight" to the findings of a certain doctor and that doctor opined that the claimant was unable to squat or bend and could sit for a total of four hours in an eight-hour workday, but the ALJ crafted an RFC which included the ability to bend occasionally and to sit for up to six hours in a workday, remand for an explanation was required); Moore v. Colvin, No. 2:14-cv-455, 2015 WL 5675805, at *6–*7 (S.D. Ohio Sept. 28, 2015) (holding that ALJ erred where he gave significant weight to state agency consultative psychologists and failed to explain why he did not adopt those psychologists' clear findings that directly contradicted the RFC—for example, multiple psychologists found that claimant was "limited to work that d[id] not require strict production standards or quota requirements," but the RFC "include[d] no such limitations, and actually include[d] the opposite—i.e., the ability to complete normal production-oriented or goal-oriented work"); Marshall v. Comm'r of Soc. Sec.,

9

No. 3:14-cv-465, 2015 WL 7273113, at *6 (S.D. Ohio Nov. 17, 2015), report and recommendation adopted, 2015 WL 8682785 (S.D. Ohio Dec. 11, 2015) (holding that the ALJ erred by failing to explain why he concluded "that Plaintiff was capable of work with a pace that would allow for production quotas" despite according significant weight to the opinions of two doctors who concluded that the claimant required a work setting without strict production quotas) (punctuation modified); Sullivan v. Comm'r of Soc. Sec., No. 1:14-cv-00344, 2015 WL 667940, at *8–*10 (N.D. Ohio Feb. 17, 2015) (holding that the ALJ erred by failing to explain why the RFC allowed for occasional interaction with coworkers, supervisors, and the general public, despite the ALJ granting significant weight to the opinion of a doctor who concluded that claimant had severe problems responding appropriately to supervisors, coworkers, and work pressures)).

The Commissioner argues that both the ALJ and the magistrate judge concluded that the RFC was consistent with the limitations in Dr. Brady's opinion. Resp. at 4. The Commissioner argues that Broderick is therefore objecting simply to the ALJ's failure to include Dr. Brady's statement—"As a result of her emotional state she may often be distracted and her effectiveness and performance will likely be limited and slowed"—verbatim in the RFC. Id. at 3. The Commissioner correctly points out that the cases provided by Broderick address scenarios in which an ALJ afforded medical opinions great or significant weight and where those opinions contained limitations directly contradicted by the RFC. Id. at 3–4.

Finally, the Commissioner directs this Court's attention to Reeves v. Comm'r of Soc. Sec., 618 F. App'x 267 (6th Cir. 2015). See R&R at 5. In that case, the ALJ accorded great weight to a Dr. Torello's opinion because it was consistent with the record, but the ALJ did not incorporate certain limitations from the opinion—such as "balancing, avoidance of hazards, avoidance of vibration, and left arm feelings limitations"—into the RFC. Reeves, 618 F. App'x at 275. The

10

United States Court of Appeals for the Sixth Circuit held that the ALJ was not required to adopt these limitations because Dr. Torello was the only doctor who described them, so they "lack[ed] substantial support elsewhere in the record." Id. "Although the ALJ gave great weight to Dr. Torello's opinion, he was not required to incorporate the entirety of her opinion, especially those findings that are not substantially supported by evidence in the record." Id.

As discussed in more depth below, the Court agrees that Broderick's RFC adequately captures the impairments recognized by Dr. Brady. As a result, the ALJ was not required to explicitly address Dr. Brady's statement that Broderick may often be distracted and that her performance and effectiveness may be limited and slowed, because this statement does not contradict the RFC.

Broderick's first objection is overruled.

### B. Objection Two: Degree of Limitation in RFC Assessment

Broderick next contends that the magistrate judge erred by concluding that Dr. Brady did not find the need for a greater degree of limitation than that reflected in the RFC assessment. Obj. at 4. This argument is closely related to Broderick's first objection. She essentially argues that the RFC does not adequately account for Dr. Brady's conclusions that: (i) "Broderick demonstrated abnormalities in concentration and judgment"; (ii) "her ability to relate to others, including coworkers and supervisors, was impaired"; (iii) her "ability to withstand normal stressors in the work setting and maintain concentration were both somewhat impaired"; and (iv) Broderick "may often be distracted," and her "effectiveness and performance will likely be limited and slowed due to her emotional state." Id. (punctuation modified). Broderick also argues that testimony from the vocational expert that "employers would have end of day workday goals that would need to be met, even if the job did not have a specific goal with respect to pace," conflicts

with the RFC. Id. (citing Soc. Sec. Tr. at PageID.93).

It is unclear how Broderick believes the RFC should have accounted for these findings other than the restrictions already included. As the Commissioner argues, Broderick does not provide concrete functional limitations that she believes are necessary as a result of these findings. See Resp. at 6. As the Commissioner also argues, Dr. Brady's statement that Broderick might often be distracted and that her performance will likely be slowed due to her emotional state can be interpreted simply as a conclusion that she has a somewhat impaired ability to concentrate and that her performance might be slowed, which was accounted for in the RFC. See id. at 7.

Broderick herself lists some of the reasons that the magistrate judge concluded that Dr. Brady's opinion was adequately accounted for in the RFC, including the following:

- "The RFC accounted for the limitations in interacting with others by restricting Plaintiff to occasional interaction with supervisors and coworker[s] and precluding all interaction with the public." R&R at 26.
- "The RFC's limitation to 'simple instructions,' 'simple, routine, and repetitive tasks but not at a production rate,' and only 'routine changes in the workplace that are infrequent and easily explained' generously captures 'moderate' concentrational limitations." Id. (quoting Soc. Sec. Tr. at PageID.47).
- "The RFC's limitation to infrequent, routine changes in the workplace and the preclusion on production work and interaction with [the] public reflect Dr. Brady's finding of some level of impairment in dealing with workplace stress." Id. at 27.

Despite the magistrate judge's analysis, Broderick argues that Dr. Brady's statement that her overall effectiveness in the workplace will likely be limited and slowed contradicts the ALJ's finding that Broderick could sustain full-time work, given the vocational expert's testimony that

12

such work would require meeting end-of-day work goals. Obj. at 6. This Court fails to see how Dr. Brady's statement leads inevitably to the conclusion that Broderick is unable to meet any end-of-day work goals and is therefore unable to sustain any full-time work, and Broderick bears the burden of demonstrating that his opinion mandated additional RFC limitations. See Jordan v. Comm'r of Soc. Sec., 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant . . . retains the burden of proving her lack of residual functional capacity."). The magistrate judge's treatment of this issue demonstrated that the ALJ's RFC was supported by substantial evidence and not contradicted by Dr. Brady's testimony.

Broderick's second objection is overruled.

### C. Objection Three: Dr. Hall's Opinion

Broderick's third objection largely reiterates arguments she made to the magistrate judge regarding the ALJ's alleged failure to adequately explain why the RFC did not contain all the limitations purportedly suggested by Dr. Hall's opinion. See Obj. at 6–10.

For example, Broderick argues again that "Dr. Hall found that Broderick 'may have moderate difficulties to complete a normal workweek secondary to psychologically based symptoms,'" but that "[t]he RFC assessment, by contrast, found no limitations with respect to Broderick's ability to complete a workweek." Obj. at 7 (quoting Pl. Mot. for Summ. J. at PageID.1490). The magistrate judge already adequately addressed this argument when she explained that Dr. Hall's qualified finding that Broderick may experience difficulty completing a workweek does not support a concrete limitation. R&R at 28; see Herndon, 2021 WL 811660, at *21.

Broderick again points out that in one portion of Dr. Hall's assessment, she found that Broderick was limited to brief and superficial interactions with supervisors and co-workers, but

13

that the RFC limited Broderick to occasional (rather than brief and superficial) interactions with these individuals. Broderick objects that the magistrate judge erred by finding that the ALJ was not required to explain why he did not adopt the brief and superficial limitation, which is distinct from a limitation to occasional interactions. Obj. at 7 (citing Lindsey v. Comm'r of Soc. Sec., No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018), report and recommendation adopted, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) ("'Occasional contact' goes to the quantity of time spent with [] individuals, whereas 'superficial contact' goes to the quality of the interactions."); Redd v. Comm'r of Soc. Sec., No. 1:20-cv-222, 2021 WL 1960763, at *4 (W.D. Mich. May 17, 2021) ("[C]ourts have distinguished limitations that concern 'the quality or nature of interactions' from limitations that concern 'the quantity of time involved with those interactions'")).

Broderick takes issue with the magistrate judge's reliance on Her v. Comm'r of Soc. Sec. for the proposition that the ALJ's failure to explicitly reconcile the two portions of Dr. Hall's opinion is not grounds for remand because "'[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.'" Id. at 8 (quoting Her, 203 F.3d at 389–390). Broderick argues that Her is inapposite because in that case, the ALJ had rejected a medical opinion supporting a finding of disability, but in this case the ALJ accorded Dr. Hall's opinion significant weight. As a result, Broderick argues that the ALJ's failure to build an "accurate and logical bridge" between the evidence in Dr. Hall's opinion and the resulting RFC warrants remand. Id. at 8–9 (citing Propst v. Comm'r of Soc. Sec., No. 5:20-cv-01755, 2022 WL 657481, at *2 (N.D. Ohio Mar. 3, 2022) ("[A] court cannot uphold a decision, even if it is supported by substantial evidence, if the reasons

14

given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.") (punctuation modified)).

Broderick asserts that because the ALJ did not explain why he did not incorporate the brief and superficial limitation on interactions, the Court is unable to determine whether such an "accurate and logical bridge" was built between the evidence and result. Obj. at 9–10 (citing Schrader v. Astrue, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("[I]f relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.")).

The cases Broderick cites, however, do not address a scenario in which the ALJ assigned significant weight to the opinion of a doctor who themselves suggested two different limitations on the claimant's interaction with other individuals, and where the ALJ then selected one of those limitations that was supported by substantial evidence. Broderick has not disputed that the RFC's limitation of occasional interactions with coworkers and supervisors was drawn from Dr. Hall's opinion. See R&R at 29. Nor has Broderick disputed the finding that she can interact with supervisors and coworkers occasionally, a finding which was supported by record evidence that she is able to travel with others and attend sporting events. See id. The ALJ cited this record evidence in support of the RFC. Id. Under such circumstances, the Court finds that the ALJ did build an "accurate and logical bridge" between the record evidence and the RFC.

Broderick's third objection is overruled.

**D. Objection Four: Dr. Vredevoogd's Opinion**

Broderick objects that neither the ALJ nor the magistrate judge adequately explained why Dr. Vredevoogd's opinion was not supported by the record. Obj. at 10. Broderick focuses primarily on her ability to handle stress, arguing that if, as the magistrate judge stated, she voiced

15

suicidal thoughts in response to minor stressors and was hospitalized as a result, this would support rather than contradict Dr. Vredevoogd's opinion. Id. at 10–11.

As the magistrate judge explained, however, Dr. Vredevoogd's opinion that Broderick is unable to work is a determination properly left to the Commissioner. See R&R at 30. The ALJ also considered Broderick's various hospitalizations but found that Broderick's stress in part stemmed from external financial and living situations, noted that the hospitalizations were brief and mental status examinations taken around the same time were unremarkable, and pointed to records in which Broderick denied suicidal thoughts. Id. at 32.

As the Commissioner notes, Broderick's RFC does account for some limitations in the ability to handle stress, in that it limits her to simple work with infrequent workplace changes, precludes working at a production pace, and limits her interactions with others. Resp. at 11.

Moreover, substantial evidence supports the ALJ's determination that Broderick is not so limited in her ability to handle stress that she is unable to sustain employment. See R&R at 31 (recounting the evidence the ALJ relied on in order to determine that Broderick was not "so unstable that she could not handle stress," including evidence of her "frequent travel to places within the United States and internationally," which was "not consistent with someone who could not handle stress"). "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.'" Her, 203 F.3d at 389–390.

Broderick's fourth objection is overruled.

### III.   CONCLUSION

For the foregoing reasons, the Court overrules Plaintiff's objections (Dkt. 15), adopts the recommendation contained in the R&R (Dkt. 14), denies Plaintiff's motion for summary judgment

16

(Dkt. 10), grants Defendant's motion for summary judgment (Dkt. 12), and affirms the decision of the Commissioner.

SO ORDERED.

Dated: March 30, 2023　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

17